**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------X
GAIL KELLY,

                    Plaintiff,

          -against-

HOWARD I. SHAPIRO & ASSOCIATES
CONSULTING ENGINEERS, P.C.;
LAWRENCE SHAPIRO, in his official and
individual capacities; and JAY SHAPIRO, in
his official and individual capacities,

                    Defendants.
---------------------------------------------------------X

**MEMORANDUM OF**
**DECISION AND ORDER**
11-CV-5035 (ADS)(AKT)

<u>**APPEARANCES:**</u>

**Goodstadt Law Group, PLLC**
*Attorneys for the Plaintiff*
One Old Country Road, Suite 347
Carle Place, NY 11514
          By: Andrew S. Goodstadt, Esq., Of Counsel

**Kruman & Kruman, P.C.**
*Attorneys for the Defendants Howard I. Shapiro & Associates Consulting Engineers, P.C., and*
*Jay Shapiro*
353 Hempstead Avenue, Suite 1
Malverne, NY 11565-1263
     By:  Henry E. Kruman, Esq., Of Counsel

**P.M. Bernstein, P.C.**
*Attorney for the Defendant Lawrence Shapiro*
595 Stewart Avenue, Suite 510
Garden City, NY 11530
     By:  Philip M. Bernstein, Esq.

**SPATT, District Judge**.

          The plaintiff in this case, Gail Kelly ("Kelly" or "the Plaintiff") brings this action against

her former employer Howard I. Shapiro & Associates Consulting Engineers, P.C., ("Shapiro &

Associates"), and Shapiro & Associates Vice-Presidents Lawrence Shapiro ("Lawrence"), and

Jay Shapiro ("Jay" and together with Lawrence and Shapiro & Associates, the "Defendants"), alleging claims of gender discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*  Presently before the Court are two motions to dismiss the complaint pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6).  The first is a motion by defendants Jay and Shapiro & Associates, and the second is a motion by Lawrence. For the reasons set forth below, the Court grants both motions to dismiss the complaint.

## I.  BACKGROUND

### A.  Factual Background

Gail Kelly is a female resident of the State of South Carolina and a former employee of the three-generation, family-owned and operated business, defendant Howard I. Shapiro & Associates Consulting Engineers, P.C.  Shapiro & Associates provides consulting and design services to the construction industry, construction equipment manufacturers, and crane owners and operators.  Kelly commenced employment at Shapiro & Associates in 1981, when the company was run by her father, Howard I. Shapiro, who, according to Kelly, said she could work for the company until she decided to retire.  In or about 1989, the structure of the company changed when Kelly's brothers, defendants Jay and Lawrence Shapiro, joined the company as partners after obtaining the necessary engineering licenses.

Kelly asserts that, although she did not possess the proper license to become a partner or principal of the company, she was regarded as part "of the senior management team."  (Compl., ¶ 20.)  Throughout her employment at Shapiro & Associates, Kelly performed numerous executive functions such as "comptroller, office manager, Head of Human Resources, bookkeeper and time manager."  (Compl., ¶ 17.)  In 2007, the structure of the company changed again when her father

Howard I. Shapiro passed away.  Kelly states that, at this point, Jay and Lawrence Shapiro took control of the company and her role expanded further.  However, Kelly does not explain what specifically changed with respect to her role at the company.

In addition, although Kelly alleges that Jay and Lawrence Shapiro both hold the position of Vice-President of the company, she does not state when they acquired these titles.  However, there is no dispute that both Jay and Lawrence Shapiro were in supervisory positions superior to Kelly's role in the company, and therefore this information is unnecessary to the resolution of the instant motions.

According to Kelly, in or around November of 2008, she became aware that Lawrence, a married man, was engaged in a relationship with Kelly Joyce ("Joyce"), a mid-level employee, and Kelly's subordinate in the company.  Kelly alleges that "she noticed that they began spending the majority of their time together to the exclusion of Ms. Kelly and others who needed Lawrence Shapiro's attention for business related matters".  (Compl., ¶ 24.)  At the time the affair allegedly began, Kelly states that Joyce's job required her to act as a liaison between Shapiro & Associates and the NYC Building Department and their inspectors and to coordinate the necessary paperwork to get approvals from the relevant NYC agencies.

After learning of the affair, Kelly contends that she attempted to dissuade Lawrence from pursuing the affair, and explained that she believed the relationship would have a detrimental effect on the company and presented a conflict of interest.  Kelly also contends that, in this initial conversation, she "mention[ed] the adverse effect if was having on [her] employment".  (Compl., ¶ 25.)  Subsequent to her initial complaint about the affair, Kelly alleges that Lawrence and Jay began engaging in conduct that created a hostile work environment by showing preferential treatment to Joyce to the detriment of Kelly and Shapiro & Associates as a whole.

For example, Kelly contends that Joyce produced "falsified time sheets" for the dates of January 19, 2009, April 24, 2009, and May 14, 2009, when Joyce billed for hours on days or at a time when she was either on vacation, out to lunch without returning to the office, or picking Lawrence up at the airport in violation of "well-established written Company policy". (Compl., ¶ 32.) According to Kelly, when she, as the manager in charge of time management and Human Resources, brought the time-sheets to Joyce's attention, Joyce responded by berating her "verbally and in writing", and attempted to start a physical altercation. (Id.) Kelly asserts that she complained to Jay and Lawrence about Joyce's fabrication of time sheets and subsequent "threatening and insubordinate conduct", but that Lawrence ignored her complaints and sided with Joyce. (Compl., ¶ 33.) The only other incident for which Kelly provides a date occurred on "St. Patrick's Day" in 2009, when Joyce allegedly arrived at the office intoxicated and Jay prevented Kelly from disciplining her.

The remaining allegations in the complaint regarding a hostile work environment refer to conduct that allegedly occurred at unspecified times between November of 2008 and January 1, 2010. In particular, Kelly alleges:

- Joyce violated company protocol by leaving the office early and taking days off without notifying Kelly. When Kelly attempted to raise the issue with Joyce, Kelly contends that Joyce "screamed at [her] in front of the entire office", and that Lawrence "did not discipline Ms. Joyce for her insubordination and patently unprofessional behavior". (Compl., ¶¶ 34, 35.)

- Jay permitted Joyce to violate the well-established company accounting policy that required employees to fill out a check-request form in order to obtain a company check, "effectively strip[ing] Ms. Kelly of her accounting responsibilities as they related to Ms. Joyce". (Compl., ¶¶ 36, 37.)

- Lawrence and Joyce "screamed and cursed" at Kelly "in front of her colleagues" when Kelly, in her capacity as head of Human Resources, left an IRS wage garnishment notice on Ms. Joyce's desk. (Compl., ¶ 38.)

- Joyce violated company policy by returning to the office in an intoxicated state with clients after hours. After two employees complained to Kelly about Joyce's "drunken and unauthorized behavior", Kelly complained to Lawrence and Jay,

who "refused to reprimand Ms. Joyce or levy any type of punishment". (Compl., ¶ 43.)

- Jay "turned a blind eye" when Kelly complained that Joyce was "accepting kickbacks from two inspectors from the New York City Department of Buildings, creating a conflict of interest with the Company in violation of her ethical responsibilities and duties", and berated Kelly for challenging Joyce's conduct. (Compl., ¶ 44.)

- Lawrence prevented Kelly from disciplining Joyce after a client appeared at the office with attorneys to complain about Joyce completely abandoning a project for that client. (Compl., ¶¶ 45, 46.)

- Jay "refused to take any corrective action" against Joyce when Kelly complained to Jay that, in retaliation for Kelly's complaints to Lawrence and Jay about Joyce's behavior, Joyce "physically confronted" her; "attempted to start an altercation" with her; and tried to persuade other "employees to retaliate against [her] by buying them meals during work and alcoholic drinks after working hours." (Compl., ¶¶ 53, 54.)

Kelly contends that the above-cited conduct created a "sexually-biased environment" that prevented Kelly "from performing her job", (Compl., ¶ 35), and that it "placed Defendant Lawrence Shapiro's romantic interest ahead of the best interests of Shapiro & Associates, and to the material detriment of Ms. Kelly's employment at the Company" (Compl., ¶ 37). In addition, Kelly contends that this conduct "created an atmosphere in the workplace that was demeaning to women". (Compl., ¶ 47.) Kelly alleges that "veteran female employees complained to [her] about the unfair and obvious favoritism shown towards Ms. Joyce", and that other female employees complained that they were unable to do their jobs because Lawrence spent a large portion of each day with Joyce. (Compl., ¶ 48.)

Furthermore, in addition to the above-stated complaints about Joyce's violations of company policy; insubordination; and unethical conduct, Kelly alleges that she also complained to Lawrence and Jay regarding discrimination and harassment. Specifically, Kelly alleges that, beginning in November of 2008, she began complaining to Lawrence and Jay about: (1) Lawrence's affair with Joyce and "the discrimination and harassment that she suffered due to

such relationship"; and (2) that their conduct in "undermining her authority in favor of Ms. Joyce . . . . constituted unlawful discrimination". (Compl., ¶ 49). According to Kelly, the Defendants retaliated against her for these complaints by "reducing her responsibilities, berating her in front of other employees, and creating (and encouraging Ms. Joyce to create) a work environment that was so hostile as to leave Ms. Kelly with no option other than to leave the Company". (Compl., ¶ 51.)

Kelly further alleges that the Defendants retaliated against her for complaining of discrimination by punishing her family members, who were also employed at Shapiro & Associates. Specifically, Kelly alleges, that:

- At some point in time in early 2009, "without any prior notice or warning," the Defendants terminated Kelly's son, who was an expediter for the company, "in direct retaliation for [her] good faith complaints about Defendants' discriminatory and biased mistreatment of her". (Compl., ¶ 59.)

- In October of 2009, Lawrence and Ms. Joyce ceased assigning Kelly's husband, Eugene Kelly ("Eugene"), "a senior certified crane and scaffolding inspector . . . any substantive work to perform" and reassigned his work to Joyce, who Kelly argues "was grossly unqualified to perform such inspections." (Compl., ¶¶ 55, 58.) According to Kelly, Jay told Eugene that Lawrence conveyed to him that he would not give Eugene any more work "after Ms. Kelly complained about the unlawful discrimination and harassment". (Compl. ¶ 57.)

- On December 31, 2009, the Defendants terminated Eugene, without notice, on the ground that there was a lack of work, despite the fact that Shapiro & Associates was hiring new employees.

Finally, on January 1, 2010, Kelly alleges that the company forced her to leave "with the promise that she would be paid a substantial amount of money in exchange for a release and some continuing cooperation with the Company." (Compl., ¶ 61.) According to Kelly, she "reached a final settlement" with the company and continued to perform "many of her obligations under the terms of their agreement." (Compl., ¶ 62.) However, Kelly contends that the Defendants reneged on their agreement in retaliation for her complaints about the

"discrimination and the hostile work environment created by Defendants and Ms. Joyce."

(Compl., ¶ 63.)

At an unspecified date, Kelly left the company. Accordingly, to Kelly, she had no other option but to leave the company because she was "unable to withstand the constant and continuing harassment and retaliation, as well as the drastic and adverse reduction in her duties and responsibilities in retaliation for [her] complaints." (Compl., ¶ 60.)

**B. Procedural History**

On October 22, 2010, Kelly timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission, and received a Right to Sue letter on July 22, 2011. Subsequently, on October 17, 2011, Kelly commenced the instant action against the Defendants asserting causes of action for gender discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq.*, and the New York State Human Rights Law, N.Y. Executive Law § 296 *et. seq.* The causes of action pursuant to Title VII are asserted only against Shapiro & Associates, and the causes of action under the NYHRSL are asserted against all of the Defendants. In addition, Kelly asserts a claim against Jay and Lawrence under the NYSHRL for aiding and abetting Shapiro & Associates' alleged discriminatory acts.

On December 8, 2011, Lawrence filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), and Jay and SHAPIRO & ASSOCIATES jointly filed a separate motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Although filed as separate motions, to the extent the Defendants make the same arguments, the Court will address them together.

## II.  DISCUSSION

### A.  Legal Standard for a Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

Under the now well-established Twombly standard, a complaint should be dismissed only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007).  The Second Circuit has explained that, after Twombly, the Court's inquiry under Rule 12(b)(6) is guided by two principles.  Harris v. Mills, 572 F.3d 66 (2d Cir. 2009) (citing Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009)).

"First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'"  Id. (quoting Iqbal, 129 S. Ct. at 1949).  "'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss' and '[d]etermining  whether a complaint states a plausible claim for relief will ... be a context–specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  Id. (quoting Iqbal, 129 S. Ct. at 1950).  Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and ... determine whether they plausibly give rise to an entitlement of relief."  Iqbal, 129 S. Ct. at 1950.

In considering a motion to dismiss, this Court accepts as true the factual allegations set forth in the complaint and draws all reasonable inferences in the Plaintiffs' favor.  Zinermon v. Burch, 494 U.S. 113, 118, 110 S. Ct. 975, 979, 108 L. Ed. 2d 100 (1990); In re NYSE Specialists Secs. Litig., 503 F.3d 89, 91 (2d Cir.2007).  Only if this Court is satisfied that "the complaint cannot state any set of facts that would entitle the plaintiff to relief" will it grant dismissal pursuant to Fed. R. Civ. P. 12(b)(6).  Hertz Corp. v. City of New York, 1 F.3d 121, 125 (2d Cir.

1993). The issue on a motion to dismiss is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Todd v. Exxon Corp., 275 F.3d 191, 198 (2d Cir. 2001) (quoting Scheuer v Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)).

As an initial matter, the Defendants raise a number of issues with respect to the timeliness of the Plaintiff's hostile work environment and retaliation claims, as well as whether the January 1, 2010 settlement constitutes a "constructive discharge". However, a common argument of all the Defendants is that the Plaintiff failed to state a claim upon which relief can be granted under Title VII and the NYSHRL, requiring dismissal pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons that follow, the Court agrees. Therefore, the Court does not reach the Defendants' alternate grounds for dismissal.

Furthermore, the standards for evaluating claims arising under Title VII and the NYSHRL are identical for both hostile work environment and retaliation claims. See Weinstock v. Columbia Univ., 224 F.3d 33, 42 n. 1 (2d Cir. 2000); Cruz v. Coach Stores, Inc., 202 F.3d 560, 565 n.1 (2d Cir. 2000); Smith v. Town of Hempstead Dep't of Sanitation Sanitary Dist. No. 2, 798 F. Supp. 2d 443, 451 (E.D.N.Y. 2011) (Spatt, J.); Davis v. Oyster Bay–East, No. 03-CV-1372, 2006 WL 657038, at *8, n. 12 (E.D.N.Y. Mar. 9, 2006), aff'd, 220 F. App'x 59 (2d Cir. 2007). Thus, although the Court's analysis focuses on the Plaintiff's hostile work environment and retaliation claims under Title VII, it is equally applicable to her claims under the NYSHRL. However, the Court will separately address the Plaintiff's claims asserted against Lawrence and Jay under the NYSHRL for aiding and abetting discrimination.

**B.  Whether the Plaintiff States a Claim for Discrimination and Harassment**

The Plaintiff asserts that she was subjected to unlawful discrimination and harassment in violation of Title VII and the NYSHRL based on the Defendants "widespread sexual favoritism" that "became so severe or pervasive that it altered the conditions of her employment and created a hostile working environment amounting to gender discrimination".  (Pl's Br. at 14.)

Title VII prohibits employers from "discriminat [ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." 42 U.S.C. § 2000e-2(a)(1). "The purpose of this provision is to prevent 'disparate treatment of men and women in employment.'"  Petrosino v. Bell Atlantic, 385 F.3d 210, 220 (2d Cir. 2004) (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 64, 106 S. Ct. 2399, 91 L. Ed. 2d 49 (1986)).  "One form of gender discrimination prohibited by Title VII is sexual harassment that results in a 'hostile or abusive work environment.'" Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp., 136 F.3d 276, 289 (2d Cir. 1998).  "Under this doctrine, even if an employee does not experience a specific negative action, he may have a viable claim under Title VII for sexual discrimination where the harassment is so pervasive that it changes the conditions of employment."  Krasner v. HSH Nordbank AG, 680 F. Supp. 2d 502, 512 (S.D.N.Y. 2010) (internal quotation marks and citation omitted).

> To state a claim for gender-based hostile work environment in violation of Title VII [or the NYSHRL], a plaintiff must plead facts that would tend to show that the complained of conduct: (1) is objectively severe or pervasive—that is . . . creates an environment that a reasonable person would find hostile or abusive;  (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's sex.

Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007) (internal quotation marks and citation omitted). These three elements are termed, respectively, the objective, subjective, and prohibited causal factor requirements. Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001).

Even assuming the Plaintiff plausibly alleges the existence of a "hostile and abusive" work environment, "mistreatment at work, whether through subjection to a hostile environment or through such coercive deprivations as being fired or being denied a promotion, is actionable . . . only when it occurs because of an employee's sex, or other protected characteristic." Brown, 257 F.3d at 252 (citing Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 79–80, 118 S. Ct. 998, 140 L. Ed. 2d 201 (1998)). "'[S]ex,' when read in [the context of Title VII] logically could only refer to membership in a class delineated by gender, rather than sexual activity regardless of gender. . . . The proscribed differentiation under Title VII, therefore, must be a distinction based on a person's sex, not on his or her sexual affiliations." DeCintio v. Westchester Cnty. Med. Ctr., 807 F.2d 304, 306–07 (2d Cir. 1986).

"In order to show that the allegedly harassing conduct was motivated by gender, or that 'gender played a motivating part in an employment decision,' a female plaintiff must show that one of the reasons for the harassment or the decision was that she 'was a woman.'" Galdieri-Ambrosini, 136 F.3d at 289 (quoting Price Waterhouse v. Hopkins, 490 U.S. 228, 250, 109 S. Ct. 1775, 1790-91, 104 L. Ed. 2d 268 (1989) (internal quotation marks omitted). Although Defendant Lawrence appears to argues that he could not have discriminated against Kelly because she is his sister, the family relationship does not factor into the Court's analysis. In the end, what matters is "how the [Defendants] would have treated the [P]laintiff had she been of a different sex." Brown, 257 F.3d at 254 (emphases omitted); Krasner, 680 F. Supp. 2d at 514 ("The prohibited causal factor requirement makes clear that a sexually 'hostile environment' in

the Title VII context is not one that is bad for all living things in a manner that happens to involve sex; rather, it is one that is *discriminatorily* hostile to an employee based on *his* or *her* sex.") (emphasis in original).

Here, the Plaintiff bases her claim for a gender-based hostile work environment on the alleged "widespread sexual favoritism" that resulted from the Lawrence-Joyce relationship. The Defendants contend that the Plaintiff has failed to plausibly allege the existence of "widespread sexual favoritism" or that any alleged discrimination was based on the Plaintiff's gender. The Court agrees.

As a general matter, "under the law in this Circuit, showing favoritism toward workers with whom a decisionmaker is familiar does not amount to discrimination based on a protected category." Pearson v. Lynch, No. 10-CV-5119, 2012 WL 983546, at *8 (S.D.N.Y. March 22. 2012). Moreover, it is well-settled that favoritism of an employee based upon a consensual romantic relationship, frequently referred to as "the paramour preference", is not actionable under Title VII or the NYSHRL as a form of gender discrimination. See DeCintio v. Westchster Cnty. Med. Ctr., 807 F.2d 304, 308 (2d Cir. 1986) (holding that the supervisor's "conduct, although unfair, simply did not violate Title VII. [Plaintiffs] were not prejudiced because of their status as males; rather, they were discriminated against because [the supervisor] preferred his paramour."); Fella v. Cnty. of Rockland, 297 A.D.2d 813, 747 N.Y.S.2d 588 (2d Dep't 2002) ("Under State and Federal law, a claim of sexual discrimination does not lie where the conduct complained of by the employee involves an isolated act of preferential treatment of another employee due to a romantic, consensual relationship."); accord Drinkwater v. Union Carbide Corp., 904 F.2d 853, 863 (3d Cir. 1990); Becerra v. Dalton, 94 F.3d 145, 149–50 (4th Cir.1996); Ackel v. Nat'l Commc'ns., Inc., 339 F.3d 376, 382 (5th Cir. 2003); Schobert v. Illinois Dep't of

Transp., 304 F.3d 725, 733 (7th Cir. 2002); <u>McGinnis v. Union Pacific Railroad</u>, 496 F.3d 868, 874 (8th Cir. 2007) <u>Knadler v. Furth</u>, 253 F. App'x 661, 664 (9th Cir. 2007) (citing <u>Candelore v. Clark County Santitation Dist.</u>, 975 F.2d 588 (9th Cir. 1992) for the proposition that the Ninth Circuit "ha[s] not accepted the 'paramour' theory of gender discrimination"); <u>Taken v. Oklahoma Corp. Comm'n</u>, 125 F.3d 1366, 1370 (10th Cir. 1997); <u>Womack v. Runyon</u>, 147 F.3d 1298, 1301 (11th Cir. 1998).

Nevertheless, the Plaintiff contends that a single consensual relationship between a supervisor and a employee that is subordinate to the Plaintiff can support a claim for a sex-based hostile work environment when the impact of the affair is not "isolated" but rather results in "widespread sexual favoritism" that alters the terms and conditions of the Plaintiff's employment.

The Plaintiff relies on <u>Calder v. Planned Community Living, Inc.</u>, No. 93-CV-8882, 1995 WL 456400 (S.D.N.Y. Aug. 2, 1995), to support this contention. In <u>Calder</u>, the plaintiff, a former supervisor employed by the defendant, alleged that she was subjected to a hostile work environment on the basis of sexual favoritism resulting from a consensual relationship between a female Executive Director, Alice Levee ("Levee"), and Levee's boyfriend, Robert Stanley, who was subordinate to the plaintiff. According to Calder, after she attempted to follow New York and company policy to investigate complaints about Stanley's work performance and practices, Levee impeded the investigation; accused the plaintiff of insubordination to the board of directors; and provided her with an ultimatum of either resigning, in which she would "receive her vacation pay, or be fired, in which case plaintiff would lose all accrued benefits." 1995 WL 456400, at *2. Subsequent to the plaintiff's refusal to resign, she was fired. <u>Id.</u>

The court denied the defendant's motion to dismiss the plaintiff's claim for sexual harassment based on sexual favoritism, holding that the plaintiff had sufficiently alleged that the supervisor's relationship with a employee who was subordinate to the plaintiff "created a sexually-biased environment which prevented plaintiff from performing her job, thus changing the terms and conditions of her employment."  Id., at *8.

Similar to Calder, the Plaintiff in this case alleges that Joyce was her subordinate, and, that "the sexual relationship between [Lawrence] and Joyce created a hostile work environment altering the terms and conditions of her employment".  (Pl.'s Opp. 15.)  Kelly alleges that Lawrence and Jay bestowed preferential treatment on Joyce by permitting her to violate company policy.  In addition, Kelly alleges that the Defendants permitted Joyce to verbally berate and threaten Kelly and to act in an insubordinate manner towards Kelly without any repercussions.  In many of these instances, Kelly contends that it was her responsibility to enforce the relevant company policies and to discipline employees.  Therefore the Defendants' favoritism towards Joyce undermined Kelly's ability to do her job; effectively changed the terms and conditions of her employment; and ultimately resulted in her constructive discharge.  Under the rationale in Calder, these allegations may be sufficient to state a claim for a hostile work environment based on sexual favoritism.

However, not only is Calder not binding on this Court, but it cannot be reconciled with the Second Circuit's holding in DeCintio that a supervisor's preferential treatment towards a subordinate employee with whom  he or she was engaged in a consensual romantic relationship, does not raise an inference of gender discrimination.  Although DeCintio was specifically a sex discrimination case, the Second Circuit's decision made it clear that all "sex"-based Title VII claims—including sexual favoritism hostile work environment or harassment claims—"require a

'causal connection between the gender of the individual or class and the resultant preference or disparity'". <u>Krasner v. HSH Nordbank AG</u>, 680 F. Supp. 2d 502, 517 n.9 (S.D.N.Y. 2010) (quoting <u>DeCintio</u>, 807 F.3d at 307); <u>Gale v. Primedia, Inc.</u>, No. 00-CV-5700, 2001 WL 1537692, at *3 (S.D.N.Y. 2001) (holding that the plaintiff could not sustain a claim for a hostile work environment based on sexual favoritism because, "in order for an employer to violate Title VII whether in a sex discrimination claim or a hostile work environment claim, the actionable conduct must be made on the basis of gender"). The Court agrees with Judge Lynch's reasoning in <u>Krasner</u> that <u>Calder</u> is "unpersuasive in its elevation of the objective hostility component of a hostile environment claim to the exclusion of the prohibited causal factor requirement" as well as his observation "that <u>Calder</u> has not been followed in this regard". 680 F. Supp. 2d at 518.

Indeed, it is well-settled in the Second Circuit that, even where "actions, taken together, systematically and pervasively altered the conditions of [the Plaintiff's] working environment sufficiently to satisfy the objective component of a hostile environment claim", a hostile work environment claim based on sexual favoritism will not exist absent allegations that "plausibly connects any of the actions taken against [the Plaintiff] to h[er] sex". <u>Id.</u> at 516–17; <u>see</u> also <u>Fattoruso v. Hilton Grand Vacations Co., LLC</u>, --- F.Supp.2d ----, 2012 WL 2102394, at *6 (S.D.N.Y. June 11, 2012) ("[T]here is nothing that indicates that plaintiff was treated 'unequally' based upon his gender, but rather all facts alleged point to unequal treatment based upon a lack of romantic relationship with Crandall."); <u>Foster v. Humane Soc'y of Rochester & Monroe County, Inc.</u>, 724 F. Supp. 2d 382, 392 (W.D.N.Y. 2010) (stating the "most significant flaw" in the plaintiff's gender-based hostile work environment claim based on sexual favoritism that allegedly "made it difficult for her to do her job" was "that plaintiff's allegations d[id] not indicate that her gender was causally related to the hostility that she allegedly faced").

Here, Kelly does not allege that she was subjected to an unpleasant work atmosphere in any way because she is a woman. Rather, her complaint is primarily that the Defendants allowed Joyce to consistently violate company policy because of Joyce's relationship with Lawrence, and that the Defendants verbally reprimanded her and undermined her ability to do her job when she attempted to enforce those policies against Joyce, or complained about the relationship. Absent from the complaint are any allegations suggesting even the slightest "semblance of gender-oriented motivation in the events". Galdieri-Ambrosini, 136 F.3d at 292. "Simply because the challenged conduct in this case–principally, the alleged office romance[]–'touched on matters of sexuality,' does not mean that the conduct constituted a form of sex discrimination." Krasner, 680 F. Supp. 2d at 518 (quoting Brown, 257 F.3d at 256).

Notably, prior to her complaining about the affair, the only consequence of the relationship that the Plaintiff alleges she was subjected to was the fact that, because Lawrence and Kelly were spending so much time together, it was difficult to get Lawrence's attention for business matters. All of the conduct that the Plaintiff alleges created the hostile work environment began *after* she expressed her opposition to the affair. This suggests that "[w]hatever 'hostility' [the Plaintiff] experienced . . . were motivated by the complaints themselves, not by any unlawful discriminatory animus". Sullivan V. Chappius, 711 F. Supp. 2d 279, 287 (W.D.N.Y. 2010). "Even if [Kelly's] disapproval of [Lawrence's] affair was the true animus behind the harassment, it was a motivation that did not rely upon [Kelly's] gender and, as such, it is not within the ambit of Title VII's protections". Krasner, 680 F. Supp. 2d at 518 (internal quotation marks and citation omitted).

The Plaintiff includes only two gender related allegations in the complaint. First, the Plaintiff contends that "several female employees complained that [Lawrence] prevented them

from performing their jobs, as they were unable to get into his office to meet with him [because] [Lawrence] spent a large portion of each day with Ms. Joyce". (Compl., ¶¶ 47, 48.) While such an allegation could potentially support a claim for *quid pro quo* sexual harassment—which the Plaintiff does not allege here—the Court notes that, although female employees allegedly made these complaints about denial of access, the Plaintiff does not allege that male employees were granted access to Lawrence that female employees were denied.

Indeed, throughout the complaint, the Plaintiff includes allegations regarding the detrimental effects the purported "widespread sexual favoritism" had on Shapiro & Associates generally, not merely its female employees. Thus, the complaint is not only bereft of allegations that only women suffered the negative effects of the affair, but contains allegations supporting the fact that the purported discrimination was not gender-based. Fattoruso v. Hilton Grand Vacations Co., LLC, --- F.Supp.2d ----, 2012 WL 2102394 (S.D.N.Y. 2012) ("That additional allegation simply re-states plaintiff's position that everyone on his team at the Hilton 57th Street location took umbrage at the romantic relationship between Crandall and MacGraw (and any advantages flowing to MacGraw therefrom)— i.e., nothing about the alleged "hostile work environment" was specific to, or because of, his being male. Plaintiff's allegations in both the Complaint and proposed Amended Complaint fail to support this theory because they fail to allege specific acts to support a claim that the work environment was hostile to men— "unfairness" does not equate to hostility, no matter how inequitable."); Kaplan v. Premiere Radio Networks, Inc., No. 01-CV-8706, 2002 WL 31356442, at *7 (N.D. Ill. Oct. 17, 2002) ("Kaplan's claims that the office was "permeated" with Walker and Leo's affair must fail because this conduct is not gender-based. All Account Executives, male or female, would have been affected

by the alleged "relationship-dominated" conversations Kaplan alludes to. This is not sufficient to create a sexually hostile work environment.").

The second allegation directly related to gender in the complaint is the Plaintiff's contention that Lawrence's conduct "created an atmosphere in the workplace that was demeaning to women". As the Plaintiff correctly notes, in the EEOC Policy Guidance on Employer Liability under Title VII for Sexual Favoritism, N-915.048 (Jan. 12, 1990), available at http:// www. eeoc. gov/ policy/ docs/ sexualfavor. html ("EEOC Policy Guidance"), the EEOC states that widespread sexual favoritism can give rise to a hostile work environment claim where, "a message is implicitly conveyed that the managers view women as 'sexual playthings,' thereby creating an atmosphere that is demeaning to women". EEOC Policy Guidance § C. However, as the EEOC Policy Guidance further explains, the type of conduct that would support a hostile work environment claim based on widespread favoritism under this theory is akin to "a situation in which supervisors in an office regularly make racial, ethnic or sexual jokes. Even if the targets of the humor 'play along' and in no way display that they object, co-workers of any race, national origin or sex can claim that this conduct, which communicates a bias against protected class members, creates a hostile work environment for them." Id.

The parties dispute whether a single consensual relationship between a supervisor and a subordinate can support a claim of widespread sexual favoritism. However, even assuming a single consensual sexual relationship between a supervisor and co-employee could create the type of demeaning atmosphere that would support a widespread sexual favoritism hostile work environment claim—a proposition that some courts dispute, see Bartniak v. Cushman & Wakefield, Inc., 223 F. Supp. 2d 524, 532 (S.D.N.Y. 2002) ("Widespread favoritism refers to an environment where multiple supervisors are engaging in this behavior such that 'a message is

implicitly conveyed that the managers view women as 'sexual playthings,' thereby creating an atmosphere that is demeaning to women.'" (quoting EEOC Policy Guidance § C)); <u>Ahern v. Omnicare ESC LLC</u>, No. 08-CV-291, 2009 WL 2591320, at *7 (E.D.N.C. Aug. 19, 2009) ("In order for widespread favoritism to constitute a hostile work environment, courts require plaintiffs to show that multiple supervisors engaged in the challenged conduct.")—the Plaintiff must still allege "far more than that a supervisor engaged in an isolated workplace sexual affair and accorded special benefits to a sexual partner". <u>Miller v. Dep't of Corrections</u>, 36 Cal. 4th 446, 470, 115 P.3d 77 (Cal. 2005).

Further, the Plaintiff's argument that the widespread sexual favoritism constituted gender discrimination because it resulted in an atmosphere "demeaning to women", is entirely unsupported by the allegations in her complaint. The Plaintiff does not allege that Lawrence and Joyce engaged in sexually explicit behavior or conversations in the office, or that Lawrence took *any* actions or made any statement that were of a sexual or gender-specific nature that could be perceived as "demeaning to women". <u>See</u> <u>Drinkwater v. Union Carbide Corp.</u>, 904 F.2d 853, 862 (3d Cir. 1990) (holding that, although "evidence of a sufficiently oppressive environment could, in theory, give courts enough evidence to infer [intentional discrimination] even absent evidence of the harasser's subjective intent to discriminate. . . . there is no evidence that [superior and co-worker] flaunted the romantic nature of their relationship, nor is there evidence that these kinds of relationships were prevalent at [the defendant company]"); <u>cf.</u> <u>Miller</u>, 36 Cal. 4th at 466–69 (holding that there was a triable issue of fact as to whether the plaintiffs could maintain a hostile work environment claim on the ground that widespread favoritism created an atmosphere demeaning to women, where a prison warden was engaged in sexual relationships with three female employees with whom he frequently engaged in public displays of sexual conduct; and

who, because of their relationship with the warden, were granted employment benefits not available to others; permitted to harass the employees without repercussions; and provided advancement opportunities based upon sexual favors rather than merit); Broderick v. Ruder, 685 F. Supp. 1269, 1278 (D.D.C. 1988) (holding that the plaintiff had established a prima facie case of a hostile work environment based on sexual harassment where, "over a protracted period of time", numerous supervisors engaged in "conduct of a sexual nature" and the plaintiff "was forced to work in an environment in which the [supervisors] by their conduct harassed her and other WRO female employees, by bestowing preferential treatment upon those who submitted to their sexual advances").  Drawing all inferences in favor of the Plaintiff, the Plaintiff has failed to plead any facts to support her conclusory allegation that the Lawrence-Joyce relationship, and the alleged preferential treatment resulting from that relationship, created an atmosphere "demeaning to women".

Although the Plaintiff may have been subjected to a hostile and abusive environment because she opposed the affair and the Defendants' preferential treatment of Joyce, these allegations of hostility are "grounded in workplace dynamics unrelated to her sex".  Brown, 257 F.3d at 256.  Thus, the Plaintiff has failed to state a claim for gender-based hostile work environment on the theory that the alleged widespread sexual favoritism altered the terms and conditions of her employment.  Accordingly, the Court grants the Defendants' motions to dismiss the Plaintiff's claims for discrimination and harassment under Title VII and the NYSHRL.

## C.  Whether the Plaintiff States a Claim for Retaliation

The Plaintiff alleges that the Defendants retaliated against her for complaining of unlawful discrimination and harassment by:  (1) engaging in the conduct that created the alleged

sexually-biased hostile work environment; (2) terminating her son's employment in early 2009; (3) taking work away from her husband and giving it to Joyce in October of 2009; (4) terminating her husband on December 31, 2009; (5) constructively discharging her on January 1, 2010; and (6) failing to comply with the January 1, 2010 settlement agreement.

To state a retaliation claim under Title VII and the NYSHRL, a plaintiff must show: "(1) that she was engaged in protected activity by opposing a practice made unlawful by Title VII; (2) that the employer was aware of that activity; (3) that she suffered adverse employment action; and (4) that there was a causal connection between the protected activity and the adverse action." Galdieri-Ambrosini, 136 F.3d at 292 (citing Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1178 (2d Cir. 1996)).

With respect to the first element, a "'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination." Cruz v. Coach Stores, Inc., 202 F.3d 560, 566 (2d Cir. 2000). This can include formal or informal complaints to management. Id. ("[T]he law is clear that opposition to a Title VII violation need not rise to the level of a formal complaint in order to receive statutory protection"); Sumner v. United States Postal Serv., 899 F.2d 203, 209 (2d Cir. 1990) (protected activities include "making complaints to management"). As discussed at length above, the alleged discrimination and harassment based on widespread sexual favoritism that the Plaintiff complained about to the Defendants was not unlawful.

However, the Second Circuit has held that "[a] plaintiff may prevail on a claim for retaliation even when the underlying conduct complained of was not in fact unlawful 'so long as he can establish that he possessed a good faith, reasonable belief that the underlying challenged actions of the employer violated [the] law.'" Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002) (quoting Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 155, 159 (2d Cir.

1999)) (alteration in original). "The reasonableness of the belief is to be assessed in light of the totality of the circumstances." Galdieri–Ambrosini v. Nat'l Realty & Dev. Corp., 136 F.3d 276, 292 (2d Cir. 1998). The fact that the Plaintiff alleges that she used the words "discrimination" and "harassment" in her complaints is "not enough" to state a claim for retaliation. Foster, Humane Soc'y of Rochester & Monroe County, Inc., 724 F. Supp. 2d 382, 395 (W.D.N.Y. 2010). Rather, "the court must look at the substance of her complaint, not the terminology that she used". Id.

The Plaintiff argues that she "engaged in protected by activity by voicing her complaints about the discriminatory effects of Defendant's widespread sexual favoritism". (Pl.'s Opp. 8.) The Plaintiff further argues that, even if her hostile work environment claims ultimately lack merit, "longstanding legal precedent establishes that good faith mistakes, whether of fact or law, regarding the legality of the employer's conduct, will not strip a plaintiff of statutory protection against retaliation where the plaintiff's mistake was a result of a lack of legal sophistication". (Pl.'s Opp. at 11.) However, the Plaintiff misunderstands the relevant inquiry.

A complaint is not protected simply because it alleges discrimination or the Plaintiff has a good faith belief that she is being discriminated against. Rather, in order to constitute a protected activity, the Plaintiff must have a good faith belief that she is complaining of "statutorily prohibited discrimination". See Wimmer v. Suffolk Cnty. Police Dep't, 176 F.3d 125, 134 (2d Cir. 1999) (requiring a plaintiff to have a reasonable, good faith belief that the employment practice complained of is unlawful in order to demonstrate participation in a protected activity). "[I]n order for an employee's complaints to be a "protected activity" they must relate to an alleged violation of Title VII, i.e., the complaints must relate to race or gender. Otherwise, any employee who is disgruntled or dissatisfied with any aspect of his or her employment would

ultimately find relief in Title VII even when race or gender was not an issue." Gourdine v. Cabrini Med. Ctr., 307 F. Supp. 2d 587, 598 (S.D.N.Y. 2004), aff'd in part and vac'd in part and remanded on other grounds, 128 F. App'x 790 (2d Cir. 2005).

Of importance, "[m]ere subjective good faith belief is insufficient, the belief must be reasonable and characterized by *objective* good faith." Sullivan-Weaver v. New York Power Auth., 114 F. Supp. 2d 240 (S.D.N.Y. 2000) (emphasis in original). Here, the Plaintiff has failed to allege facts sufficient to show that, even a legally unsophisticated employee would have a good faith, reasonable belief that complaints about the Defendants' preferential treatment of Joyce constituted discrimination based on gender.

Throughout the complaint, the Plaintiff alleges that she was negatively impacted by the affair not because of her gender, but because Lawrence was engaged in a relationship with Joyce. The Plaintiff does not allege that her two allegations in the complaint pertaining to gender—that the atmosphere was "demeaning to women" and that female employees complained about getting access to Lawrence—were ever repeated to the Defendants. Rather, the Plaintiff alleges throughout the complaint that she complained of the negative impact the Defendants' conduct had on the company as a whole. See Krasner, 680 F. Supp. 2d at 520 (holding that the plaintiff failed to state a retaliation claim based on a good faith belief that the widespread sexual favoritism constituted gender discrimination where the plaintiff's "own characterization of his internal complaints . . . [was] entirely gender-neutral").

While the Plaintiff may have "reasonably believed" that she was opposing the Defendants' preferential treatment of Joyce, and discrimination and harassment resulting from the relationship, the Plaintiff fails to sufficiently allege that she had a good faith, reasonable belief that this conduct was based on her gender. See Foster v. Humane Soc'y of Rochester &

Monroe County, Inc., 724 F. Supp. 2d 382, 395 (W.D.N.Y. 2010) (dismissing retaliation claim

on the ground that the plaintiff's complaints about an alleged hostile work environment resulting

sexual favoritism did not constitute "protected activity under Title VII", because it was clear

from an email, "as well as from the other allegations of the complaint, that none of what plaintiff

complained about had anything to do with unlawful discrimination"); Sullivan-Weaver, 114 F.

Supp. 2d at 243 ("Because the facts pleaded are insufficient to support a good faith, reasonable

belief that Plaintiff's replacement by another woman with whom her supervisor allegedly had a

romantic relationship constituted discrimination based on gender within the plain meaning of the

statute and the D[e]Cintio case, any retaliatory acts that she may have suffered as a result of that

opposition were not in reaction to a "protected activity," and, therefore, not actionable under

Title VII.").  However, even assuming that the Plaintiff can meet the motion to dismiss standard

for pleading that she had a good faith, reasonable belief that she was complaining about gender

discrimination, her complaint would nonetheless fail to state a claim for retaliation based on the

second factor of the analysis, namely that she does not allege any facts to support that the

Defendants were on notice that she was complaining about statutorily prohibited discrimination.

        "[I]mplicit in the requirement that the employer have been aware of the protected

activity is the requirement that it understood, or could reasonably have understood, that the

plaintiff's opposition was directed at conduct prohibited by Title VII."  Galdieri-Ambrosini v.

Nat'l Realty & Dev. Corp., 136 F.3d 276, 292 (2d Cir. 1998).  Throughout her complaint, the

Plaintiff alleges that she complained of "widespread sexual favoritism", "discrimination",

"harassment", and a "hostile environment".  The Plaintiff argues that her complaints about the

"sexually-biased environment" and "widespread sexual favoritism" sufficiently constituted

protected activity "regardless of whether [she] used the word 'gender' in his complaints" because

she "duly put Defendant on notice that she reasonably believed discrimination occurred". (Pl.'s Opp. at 11.) Under the facts as alleged in this case, the Court finds this argument unavailing. While the Plaintiff "need not have explicitly used the words 'discrimination' or 'gender' to afford [her] complaints protected activity status," if the protested activity "does not lend itself to a reasonable inference of unlawful discrimination, such 'magic words' may be the only way to put the employer on notice that the employee believes [her]self to be complaining of discriminatory conduct." Krasner, 680 F. Supp. 2d at 521–22 (internal quotation marks and citations omitted).

Here, the Plaintiff's complaints were limited to the detrimental impact of the Lawrence-Joyce relationship on the Plaintiff's work and on the company as a whole. As previously stated, although the Plaintiff alleges that she believed that the Defendants' conduct created "an atmosphere demeaning to women", and that other female employees complained to her about the affair interfering with their ability to do their job, she does not allege that she conveyed these complaints to the Defendants. Rather, the only purported complaints relating to the company as a whole, as opposed to the Plaintiff specifically, were the Plaintiff's complaints about the "detrimental effects of the affair on [Shapiro & Associates] [and] the conflict of interest that it created (e.g., Defendants turned a blind eye to kick backs Ms. Joyce received from the NYC Department of Buildings inspectors, and failed to discipline Ms. Joyce for abandoning a project for a client) . . ." (Pl.'s Opp. at 7 (citing Compl., ¶¶ 25-26, 36-37, 44-45).

Accordingly, the Plaintiff's complaints to Lawrence and Jay "did not state that [she] viewed [Lawrence's] actions as based on gender, and there was nothing in her protests that could reasonably have led [the Defendants] to understand that was the nature of her objections". Galdierei-Ambrosini, 136 F.3d at 292; Inganamorte v. Cablevision Sys. Corp., No. 03–CV–

5973, 2006 WL 2711604 at *16 (E.D.N.Y. Sept. 21, 2006) (holding that the employer could not have been aware plaintiff's complaint concerned gender discrimination because the complaint failed to "state or imply that gender ha[d] anything to do with her objections" and her complaint indicated that men also received similar unfair treatment); Krasner, 680 F. Supp. 2d at 521–22 (dismissing retaliation claim where the plaintiff "admit[ted] that all of his pre-termination complaints . . . addressed only [his supervisor's] affair with [a female employee], which he characterized as a violation of [the employer's] ethics policy, and the detrimental effects of this relationship on [the plaintiff] and on the department" in which he worked).

Based on the allegations in the complaint, there can be no dispute that the Plaintiff has plausibly alleged that the Defendants retaliated against her for complaining about the Lawrence-Joyce affair. Indeed, accepting the Plaintiff's facts as true, the Defendants admitted to the Plaintiff that they terminated her husband's employment because of her complaints. However, it is not a violation of the statutes at issue to take adverse employment actions against an employee who continually complains about unfair treatment. Such behavior is not actionable under Title VII or the NYSHRL unless the Defendant takes those actions based on complaints of unlawful discrimination. See Krasner, 680 F. Supp. 2d at 522 (dismissing the plaintiff's retaliation claim because "any adverse employment actions that befell him—while quite plausibly a product of [the supervisor's] displeasure with [the plaintiff] for complaining about [the supervisor's affair with another employee]—could not have been undertaken in retaliation for any protected activity.").

Ultimately, there is nothing about the Plaintiff's complaints as alleged that would put have put the Defendants on notice that the Plaintiff was complaining of discrimination based on gender. Thus, the Court finds that the Plaintiff has failed to state a claim for retaliation and

grants the Defendants' motions to dismiss the Plaintiff's retaliation claims under Title VII and the NYSHRL.

**D.  Whether the Plaintiff States a Claim for Aiding and Abetting Under the NYSHRL**

The Plaintiff asserts a cause of action against defendants Lawrence and Jay under the NYSHRL for aiding and abetting discrimination.  However, for the same reasons that the Court finds that the Plaintiff has failed to state a claim for discrimination, the Court finds that the Plaintiff has failed to state a claim against Lawrence and Jay for aiding and abetting discrimination.  Accordingly, the Court grants the Defendants' motions to dismiss this claim.

### III.  CONCLUSION

For the foregoing reasons, it is hereby:

**ORDERED**, that the Defendants' motions to dismiss the Plaintiff's claims for discrimination and harassment in violation of Title VII and the NYSHRL are granted, and it is further,

**ORDERED**, that the Defendants' motions to dismiss the Plaintiff's claims for retaliation in violation of Title VII and the NYSHRL are granted, and it is further

**ORDERED**, that the Defendants' motions to dismiss the Plaintiff's claim against Lawrence and Jay for aiding and abetting discrimination in violation of the NYSHRL are granted, and it is further

**ORDERED**, that the Clerk of the Court is directed to close this case.

**SO ORDERED.**
Dated: Central Islip, New York
August 3, 2012

_    /s/ Arthur D. Spatt_____
ARTHUR D. SPATT
United States District Judge